## PENDLETON et al. v. CONSOLIDATION COASTWISE CO.

Circuit Court of Appeals, Second Circuit.
May 9, 1927.

No. 303.

Collision ⬅98—Barge dropping anchor and coming to stop without warning held solely liable for collision of barge following.

Where tug having two barges in tow signaled for the first to cast off the hawser of the second and itself cast off the hawser of the first, intending to allow barges to drift further onto anchorage ground and anchor, and where forward barge, while both were still under headway, without warning dropped anchor and came to a full stop, with the result that rear barge collided with her, doing considerable damage, *held*, forward barge was solely at fault, and not entitled to recover in libel for damages.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by Fields S. Pendleton, Jr., and another, as administrators of the estate of Fields S. Pendleton, deceased, and another, against the Consolidation Coastwise Company. From a decree for libelants, respondent appeals. Reversed and remanded, with directions.

On May 4, 1918, a calm clear day, the barges Iron Queen, owned by the libelants, and the No. 10, owned by the respondent, in the order named, were in tow of the steam tug Georges Creek in tandem formation; the hawsers from the Georges Creek to the Iron Queen and from her to the No. 10 were approximately 25 fathoms in length.

When they arrived at the anchorage ground at Lambert's Point, Va., the Georges Creek blew a signal to the Iron Queen to cast off the hawser of the No. 10, and then cast off the hawser of the Iron Queen, to allow the barges to drift farther onto the anchorage ground and anchor.

While both barges were under headway and before they had hauled in their hawsers, the Iron Queen, without any warning to the No. 10, dropped anchor and came to a full stop.

The helm of the No. 10 was immediately put hard-astarboard and her anchor was dropped as quickly as possible, but the distance between the No. 10 and the Iron Queen was too short to enable the No. 10 to stop her headway or sheer clear, and at about 10:30

o'clock a. m. the stem of the No. 10 came into contact with the stern of the Iron Queen, inflicting considerable damage.

The court below held the No. 10 solely at fault.

Bigham, Englar & Jones, of New York City (Leonard J. Matteson and Richard F. Shaw, both of New York City, of counsel), for appellant.

Fitzgerald, Stapleton & Mahon, of New York City (Avery F. Cushman, of New York City, of counsel), for appellees.

Before MANTON and SWAN, Circuit Judges, and CAMPBELL, District Judge.

CAMPBELL, District Judge (after stating the facts as above). When the Georges Creek blew the signal and cast off the hawser of the Iron Queen, the two barges had headway, and their captains knew that they were not expected to anchor immediately, but were to drift farther onto the anchorage.

Instead of continuing to drift, the Iron Queen, without warning to the No. 10, suddenly dropped anchor and brought up in front of the No. 10, which still had headway.

The rule announced in the British courts in The Queen Victoria, 7 Asp. 9, requiring the vessel ahead to give notice of her intention to anchor to the vessel astern, is applicable.

This rule is supported by the testimony of expert navigators as good seamanship.

The court below found the No. 10 at fault, because 5 minutes elapsed after the hawser of the No. 10 was cast off and before she dropped anchor.

We do not so read the testimony, as Anderson, the master of the Georges Creek, was speaking generally, not specifying the minutes with accuracy, and the other evidence indicates that the time was shorter.

Even if the time was 5 minutes, both barges still had headway at the time they came into contact; and from the time the No. 10 heard the anchor chain of the Iron Queen running out, which was her only warning, there was not time for the No. 10 to anchor, although she acted promptly, nor were the barges far enough apart for the No. 10 to sheer clear of the Iron Queen, although in the attempt so to do the helm of the No. 10 was immediately put hard-astarboard.

The No. 10 was not at fault, but the Iron Queen was solely at fault for suddenly anchoring without warning ahead of the No. 10.

Decree reversed, with costs, and cause remanded, with directions to dismiss the libel, with costs.